Good morning. May it please the court, Jonathan Libby appearing on behalf of appellant Jose Luis Rodriguez and I intend to reserve about two minutes for rebuttal. Your honors, I'm happy to address any questions the court may have with respect to our challenge to the stop in this case, but I'd like to focus this morning on the issue of standing to challenge the search of the vehicle. Contrary to the district court's conclusion, Mr. Rodriguez did have standing to challenge the search of the Cadillac. There's no dispute that if Mr. Rodriguez was in fact the owner of the vehicle, he would have standing. Now there's no controlling case law in this circuit that indicates what a defendant has to in fact do to demonstrate the expectation of privacy. How about a pink slip registration? You know, this is pretty easy stuff. Well, with respect, your honor, I don't believe it was easy stuff. It was two o'clock in the morning. Well, but you've had lots of time since then, right? He did. However, the the car was impounded. The car has never been returned. Mr. Rodriguez had no expectation that the car be returned. He was not actually indicted for two years after all of this took place, and it's certainly not unreasonable that he would not have had the paperwork for a vehicle that he had for a matter of days years later. And what the court... I'm not sure I understand what you're saying. You don't think that if he is the owner of the vehicle, he can get the DMV to cough up paperwork, copies of the paperwork, if he doesn't have the original? Well, he had not yet registered the vehicle. Bill of sale? Sorry? Bill of sale? Anything? Your honor, it's not clear how the sale took place. He says he bought it from a friend. But he's the one who asserts, he is the one who asserts an interest in the vehicle, right, which is required in order to give him standing to challenge a search. If he doesn't have an interest in the vehicle, he doesn't, you know, he's had two years to come up with with evidence. Now, I don't understand. Anything in the record? Anything in the record that we can look at that supports his claim that this was his vehicle? His claim, for one, your honor, at the scene, he informed police that he was the owner of the vehicle. And not only that, that... Affidavit? Does he have a declaration? Anything under oath? Your honor, this was a statement against interest. He essentially made it admission to the police after he waived Miranda. I'm sorry. Yes or no? Is there anything in the record? He did not sign a declaration. Does he have a declaration saying this is my vehicle? No, your honor. No. He did not sign a declaration. What he did do is inform police at the scene that he was the owner of the vehicle and that he owned all of the contents within the vehicle, specifically all of the mail, which of course he was charged with, the backpack that was found in the trunk that contained the... What is the relevance of the contents? Well, so what the cases talk about, and the district court cited to a number of cases... Just tell me, I don't mean... I'm sorry. What is the relevance? Why don't you say it, explain it to me. Well, the relevance is numerous courts have said that when... that a defendant who asserts ownership in both the vehicle and the property within the vehicle, that is helpful evidence for determining whether or not he in fact had a legitimate expectation of privacy and had an ownership interest in the car. So I'm sorry. So the fact that he had stuff in the car is there to prove that he owns the car? It helps. And this is where it's a little difficult, your honor, because of course, as I said, in this circuit, we do not have case law that says how does this get determined? What is the standard? Now, some courts have applied a totality of the circumstances standard, and one of those circumstances that courts have looked at is the assertion by the defendant of ownership, both for the vehicle and the property within, and the timing of one that was made. Mr. Rodriguez did not wait until the suppression hearing to say, I was the owner in order to invoke standing. He said this immediately when he was arrested. He waved and said, all of this stuff was mine. Right? And so that was his assertion. That also suggests that he at least had this objective belief that he owned the vehicle and owned the property within, and those are factors that the court can consider. And he testified at the suppression hearing? He did not testify at the suppression hearing. Okay. So we have a hearing to determine the facts. He doesn't testify, so we don't have his statement claiming ownership under oath. We don't have any paperwork. He doesn't present any Why are you standing there challenging this issue? Don't you have something better to argue? Your Honor, there is nothing in the case law that says he needs to have a sworn statement indicating that he was the owner. The cases, starting with Rakes, talk about a defendant asserting an ownership interest, and he certainly did that. And he did it while confessing essentially to the crime. Well, let me make sure I understand. Is your position that this is his vehicle, or it's not? It is his vehicle. It is his vehicle. Yes, Your Honor. And you didn't present any proof of this at the evidentiary hearing? There was nothing more than the statements that he He could have testified? He could have, Your Honor, but it wouldn't have added anything more than what he had already stated to the police. Well, no, when he makes a statement to the police, that's not under oath. He makes a statement under oath. Maybe that would have been evidence. Certainly the government felt that his statements were reliable enough that they were going to use it against him at trial. The fact is, he made a statement against interest. He confessed to the crime. And that is certainly something that the Court can reasonably rely upon, Your Honor. Also... Counsel, could I ask a different question? Sure. What is your position about whether or not the frisk and that middle sequence of events, forget the stop for a minute, just the frisk, is it – you don't seem to be arguing that it has anything to do with the lawfulness of the subsequent search of the car? Well, we have made that argument, Your Honor. The government has said that it didn't really have any effect on anything, so... Because nothing was found. Their position – your time is ticking – so their position is nothing was found during the frisk. All right. So can I just go straight to my question, perhaps? The officer who asked him to step out of the car said in his declaration that I decided – I'm paraphrasing, of course – I decided I was going to frisk him, okay? If on my scorecard, I think he didn't have what he needed to frisk that individual at that time, but if we have authority that says that the officer would have been within his rights to ask him to just step out of the car during the duration of the stop, is that sufficient? Is it sufficient? Well, because my understanding is that when he stepped out of the car, the officer's version of events is that a pipe fell out and some paraphernalia fell out, and so at that point, the circumstance has changed quite markedly. So just back up the clock about 30 seconds in the sequence, the officer said in his declaration, I determined for officer safety I was going to frisk this individual, all right? So my hypothetical is just assume for a minute that I think – I'm just one of three – that I think that there wasn't sufficient grounds to frisk that individual at that time. On the other hand, we have case law authorizing the police officer to request that your client step out of the car for the So what do I do with those two conflicting authorities when I assess the lawfulness of that action, asking him to step out of the car? Well, the pipe was actually discovered and dropped after the frisk had taken place. He had already been moved to the front of the vehicle. It's the papers that fell out first, but just go to my question if it would, because you have a minute left. Well, Your Honor, what we do know is that the officers testified that based on the evidence that was discovered, because they decided to take him out and frisk him, that based on that, that gave them authorization to then search the vehicle. In fact, the officer – one officer testified that he had shown a flashlight before anyone was taken out of the car and didn't see anything unlawful, but that once that pipe fell, he decided he could then search the vehicle. So then he's arrested, some paraphernalia falls out, he's arrested for the drugs, right? He is. They decide to search the car, and then they find the mail, right? So does that change your standing analysis about the search of the car? Does it change the standing analysis? That's the question. Your Honor, the standing – again, it's very murky case law in terms of what one has to assert for purposes of standing. I would suggest there's some conflict, there's some tension as to whether or not invoking the possessory interest in the contents that were actually seized gives standing or not. We believe it does. If that goes back to Judge Kaczynski's question, I was trying to get you to address something else. In response to the questions Judge Kaczynski was asking, you seem to be taking the position that the police officers were required to rely on your client's ownership in that car, and the title wasn't registered to your client. Well, it's not clear who was the registered owner. And I know that the district court said, well, the unconsensual evidence was that he wasn't. But in fact, that's not true, because the only evidence presented was the officer saying that the vehicle report I prepared is the evidence of this person that nobody knows about is the car. And when he testified, he said, in terms of where that information came from, it was on our computer. We have no idea. So, counsel, just right there, because now you're over time. So the officer has a registered something from the radio saying the car is registered to person A. Person B, who's on the scene, says it's my car. And it seems to me, going back to Judge Kaczynski's questions, that you're proposing that the officers are required to rely on your client's statement, which is unsupported then and still. Well, it wasn't, in fact, at the scene, Your Honor. That information was obtained after Mr. Rodriguez had been processed and everything. In fact, the reports all seem to suggest the police believe that, in fact, at the time, Mr. Rodriguez was, in fact, the owner of the vehicle. Mr. Rodriguez couldn't even tell him. He said he bought it the week before, and he couldn't tell him who he bought it from. That's true. All right. Thank you. We'll give you one minute for rebuttal. Thank you, counsel. Counsel? May it please the Court. Anthony Brown for the United States. Judge Christin, I want to address the question about the Terry frisk that took place here, just first by going through the facts a little bit more closely. Thank you. So, the car was pulled over, and when the officers approached the car, Officer Oakerman decided that he wanted the defendant to step out of the car so that he could conduct the frisk. From my review of the record, I don't see any place where the officer actually conveyed that idea to the defendant. He never said, time for a Terry frisk. No, but he does in his declaration. He does in his declaration that the reason for asking Mr. Rodriguez to step out of the car was to frisk him, right? That's what he says in his declaration. What he doesn't say is, I told Mr. Rodriguez that I was going to frisk him when he stepped out of the car. Does that matter? Which I think is an important fact. Okay. But what happens is, under Pennsylvania v. MIM, the officers are allowed to ask any passenger of a car to get out of the car during the Terry stop. So, at that point, asking Mr. Rodriguez to get out of the car was lawful. Can I just, forgive me for interrupting, but right there, that's the exact one that I'm wondering about. Since this officer didn't say that's why he was asking him to get out of the car, he was asking him for a different reason. Does that matter? Well, he wasn't asking him. He was directing him to get out of the car. You've made the determination, Counsel. Counsel, please go to the question. Yes. It doesn't make any difference. I think under the sort of doctrine about whether the subjective intentions of the officer matter in Wren and cases that follow that, it doesn't matter. Under the Fourth Amendment, he's allowed to ask the passenger to get out of the car. And that's Pennsylvania v. MIM. At that point, before any Terry frisk takes place, Mr. Rodriguez dropped two bindles of methamphetamine on the ground. Both of the officers, well, Officer Tiff saw that, and both of the officers were aware of that before they searched the car. So, regardless of what happens with the pipe after the Terry frisk, they have the evidence of the drugs. The Terry frisk takes place. Whether it's lawful or not, it produced nothing. In fact, the defendant in his briefing below and in his opening brief in this appeal also conceded that it produced nothing. Well, it arguably produced a search of the car. It couldn't have produced the search of the car. What produced the search of the car were the bindles of methamphetamine on the ground and the glass pipe that the defendant dropped after the Terry's frisk. He was holding it in his hand. The frisk took place. The defendant dropped the pipe. Well, but that's why it goes right to that minute when the officer asked him to step out of the car. He's asking him to step out of the car because he thinks he's got reason to do a Terry frisk, right? I question that. And I think what the government's relying upon is he could have asked him to step out of the car for really no reason at all, except that he was going to ask him to step out for the duration of the stop. That's absolutely right. And then before any Terry frisk took place, he dropped the bindles of methamphetamine. So let's assume that the Terry frisk was not justified under the Fourth Amendment. That still produces evidence of the drugs, the bindles of methamphetamine, and that was sufficient to allow the officers to search the car. And as to standing, Your Honors, again, just to go through the facts really quickly, at least in our district court, defendants are normally required to submit a declaration under oath that attests to all the facts that they're going to rely on in their motions to suppress, and the defendant didn't do that in this case. Now, we didn't challenge it below, so I'm just mentioning that as a contextual fact here that goes to the reliability of the defendant's statement. The defendant has the burden to show that he has standing in a certain place that's searched, and the defendant here relied solely upon a hearsay statement that was in a police report that he offered during a Mirandized interview after the incident. The defendant could have produced other evidence. I'm speculating he could have produced DMV documents. He could have called as a witness the person that purportedly sold him the car. He didn't bring any of that evidence to court. The government relied on Officer Okerman's statement in his declaration, and then a violation or vehicle report that he submitted to the police to show that he had searched records and found that there was another owner of the car. I don't think the district court was wrong to find that the defendant's evidence was not sufficient in light of the evidence that contradicted it to establish that he had a reasonable expectation of privacy in the car. Unless the court has any other questions, I'll submit. Thank you, Your Honors. Your Honors, unless the panel has additional questions, I'll submit. Thank you, counsel. The case is served. It will be submitted.
judges: Reinhardt, Kozinski, Christen